IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION


ERIC T. JACKSON, et al.,

        Plaintiffs,

    vs.

GREGORY GILL, et al.,

        Defendants.

Case No. 6:20-cv-00906-MK
**OPINION AND ORDER**

AIKEN, District Judge:

    Lead plaintiff Eric T. Jackson ("Jackson") *pro se* filed this putative class action against twenty-seven defendants associated with the City of Eugene, Oregon ("the City"), Lane County, Oregon ("the County"), and St. Vincent de Paul, Inc. ("St. Vincent").[1]   Jackson alleges claims for breach of contract, "Title VII Public

---

[1] Jackson filed a Complaint (doc. 1), Application for Leave to Proceed IFP (doc. 2), Motion for Temporary Restraining Order (doc. 3), Motion to Certify the Class (doc. 5), and Motion for Settlement Conference (doc. 6) on behalf of eleven other named plaintiffs, but none have signed those documents. Because he is pro se he cannot represent other individuals. *See Johns v. Cty. of San Diego*, 114 F.3d 874, 877 (9th Cir. 1997) ("[A] non-lawyer has no authority to appear as an attorney for other than himself." (citations and internal quotations omitted)).  Jackson's attempts to represent the other named plaintiffs and a class of unnamed plaintiffs will be addressed in a future opinion.  For purposes

Accommodations violations, ORS 659A.104(2)(f)," and violations of the First, Fourth, Eighth, and Fourteenth Amendments to the United States Constitution under 42 U.S.C. § 1983.   He seeks money damages, punitive damages, declaratory relief, injunctive relief, and "retrospective relief."   Now before the Court is Jackson's motion for a temporary restraining order ("TRO").   Doc. 3.   For the reasons that follow, Jackson's motion is DENIED.

## BACKGROUND

The following facts are drawn from Jackson's complaint and Motion for TRO. Jackson has lived in Eugene since February 25, 2018.   He and the other named plaintiffs are "homeless currently and Oregon residents."   Compl. ¶ 1.   On several occasions, Jackson has been ticketed and arrested by officers of the Eugene Police Department and convicted in Eugene Municipal Court for violating Eugene Municipal Code ("EMC") provisions that prohibit trespassing, camping in public spaces in the City, and certain activities in Eugene's "Downtown Activity Zone."   *See* EMC 4.806 (Criminal Trespass in the Second Degree by a Guest); EMC 4.807 (Criminal Trespass in the Second Degree); EMC 4.815 (Prohibited Camping); EMC 4.872 (Downtown Activity Zone – Prohibited Acts).   Jackson has also been ticketed and arrested while participating in protests inspired by the Ninth Circuit's decision in *Martin v. Boise*.   Defendants have disposed of some of Jackson's personal property while he has been in custody.

---

of this motion, the Court will refer to Jackson rather than "plaintiffs."   In any event, most of the filings focus on Jackson's experiences in Eugene and with defendants.

Then, in March 2020, the City suspended its no camping rules as part of its response to the COVID-19 pandemic. The City also adopted the Centers for Disease Control ("CDC") guidelines for shelter-in-place for houseless communities, providing porta-potties and hand wash stations throughout the City, sanitary units at established camps, and free bus transportation. In late May 2020, the City announced that the no camping rules would go back into effect when the City entered "Phase 2" of Oregon's COVID-19 response. On June 5, 2020, the City entered "Phase 2," and Jackson filed this action and the present motion.

## DISCUSSION

A TRO is an "extraordinary and drastic remedy." *Mazurek v. Armstrong*, 520 U.S. 986, 972 (1997). A TRO "should be restricted to serving [its] underlying purpose of preserving the status quo and preventing irreparable harm just so long as is necessary to hold a hearing [on the preliminary injunction application], and no longer." *Granny Goose Foods, Inc. v. Teamsters*, 415 U.S. 423, 438–39 (1974).

Here, the requested TRO would not serve that underlying purpose. Jackson appears to seek at TRO that would: (1) require the County and City return to Phase 1 of its COVID-19 response with respect to Eugene's houseless community; (2) declare certain EMC provisions unconstitutional, prevent enforcement of them, and order the City to create affirmative defenses to them that protect the houseless community; (3) declare the Eugene's Municipal Court Judges are not entitled to immunity, require the court to allow defendants to record their own proceedings, and prohibit Municipal Court Judge Stenard from presiding over pre-trial proceedings until she has been

sufficiently trained. Thus, most of the requested relief appears targeted at accomplishing more than preserving the status quo to prevent irreparable harm before a preliminary injunction hearing. Further, the Court cannot issue the requested preliminary declarations because a decision on a motion for a TRO or preliminary injunction is not a ruling on the merits. *See Sierra On-Line, Inc. v. Phoenix Software, Inc.*, 739 F.2d 1415, 1422 (9th Cir. 1984).

Additionally, Jackson's Motion for TRO fails to establish why he is entitled to the requested relief. The standard for issuing a TRO is identical to the standard for issuing a preliminary injunction. *See Stuhlbarg Int'l Sales Co. v. John D. Brushy & Co.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001). A plaintiff seeking a preliminary injunction generally must show that: (1) the plaintiff is likely to succeed on the merits; (2) the plaintiff is likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in favor of the plaintiff; and (4) an injunction is in the public interest. *Winter v. Natural Res. Def. Council*, 555 U.S. 7, 20 (2008) (rejecting the Ninth Circuit's earlier rule that the mere "possibility" of irreparable harm, as opposed to its likelihood, was sufficient, in some circumstances, to justify a preliminary injunction). So long as all four parts of the *Winter* test are applied, a preliminary injunction may issue if a plaintiff demonstrates that "there is a likelihood of irreparable injury to plaintiff; there are serious questions going to the merits; the balance of hardships tips sharply in favor of the plaintiff; and the injunction is in the public interest." *M.R. v. Dreyfus*, 697 F.3d 706, 725 (9th Cir. 2012) (citing *Cottrell*).

Jackson's TRO Motion outlines the preliminary relief sought and recounts underlying facts but it does not explain why Jackson is likely to succeed on the merits, why he will likely suffer irreparable harm in the absence of preliminary relief, why the balance of hardships tips in his favor, and why an injunction is in the public interest.   Indeed, none of Jackson's filings in this case mention the balance of hardships or the public interest.  The only authority cited is *Martin v. Boise*.  The motion mentions "irreparable harm" once as part of a bare assertion that "[b]y going back to standard [pre-COVID-19] procedure Eugene, Lane County and the Police will be causing irreparable harm . . . to the homeless community . . . and their housed friends, who can't find them for weeks."  Doc. 3 at 4.

Even liberally construing the Complaint, Motion, and Jackson's Affidavit (doc. 4) and considering them together, Jackson has not shown that he is entitled to a the extraordinary remedy of a TRO.

Jackson's filings are long, rambling, primarily factual, and without a clear organizational structure.  The Complaint names twenty-three individuals and one married couple as defendants yet Jackson's filings fail to explain who many of them are.  For example, the Court cannot tell who is affiliated with St. Vincent, besides Pete Kerns and Terry McDonnald, and the Court cannot tell which claims are asserted against St. Vincent, or what its role is in the underlying issues.  The Complaint also names as defendant several Municipal Court judges and city attorneys who presided over and prosecuted, respectively, Jackson's EMC violation charges.  These defendants may be entitled to absolute immunity.  *See Cleavinger v.*

*Saxner*, 474 U.S. 193, 199 (1985) (observing the judges are entitled to immunity from damages for acts committed within their court's jurisdiction and that immunity applies "however erroneous the act may have been"); *Milstein v. Cooley*, 257 F.3d 1004, 1008 (9th Cir. 2001) ("[A]cts undertaken by a prosecutor in preparing for the initiation of judicial proceedings or for trial, and which occur in the course of his role as an advocate for the State, are entitled to the protection of absolute immunity." (internal quotations omitted)); *Paul v. City of Sunnyside*, 405 Fed. App'x 203, 205 (9th Cir. 2010) (applying absolute immunity to claim against city attorney who filed charges against the plaintiff). The Complaint header asserts claims for breach of contract and "Title VII, Public Accommodations violations, 659A.104(2)(f)" but the body of the Complaint asserts a single § 1983 claim. Jackson's other filings do not provide any other insight into his contract and public accommodations claims.

Moreover, Jackson has not demonstrated a likelihood of success on the merits or even serious questions concerning his § 1983 claim. He asserts violations of the First, Fourth, Eighth, and Fourteenth Amendments, but Jackson has not provided the Court with enough factual detail or legal authority to assess the potential merits of his allegations at this time.

For example, Jackson appears to assert that his citations and arrests while protesting violated his First Amendment right, but the nature of Jackson's protests and conduct is unclear. Jackson references a Eugene Municipal Court decision from 2013, which dismissed charges brought against protesters for violating the County's

Page 6 – OPINION AND ORDER

curfew.  That decision is not binding on this Court, and it is unclear whether Jackson was ever cited or arrested for violating a County curfew.

Jackson also appears to assert that the Eugene Police Department's disposal of his personal property, specifically "wet" property and "food," violated the Fourth and Fourteenth Amendment.  Jackson cites *Lavan v. City of Los Angeles*, 693 F.3d 1022 (9th Cir. 2012), but does not explain how the Ninth Circuit's decision in that case supports the merits of his claims.  In fact, without more factual detail or argument from Jackson, his case seems distinguishable from *Lavan*.  In *Lavan*, the Ninth Circuit addressed the City's seizure and immediate destruction of personal property that had been left momentarily unattended on sidewalks.  Here, Jackson's property appears to have been removed from public places when he was arrested and taken into custody and it is unclear whether the property was immediately destroyed.

Finally, Jackson appears to assert that, under *Martin v. Boise*, 920 F.3d 584 (9th Cir. 2019), *cert. denied*, ___ U.S. ___ (2019), EMC 4.815 and 4.872 violate the Eighth Amendment.  In *Martin v. Boise*, the Ninth Circuit concluded that "the Eighth Amendment's prohibition on cruel and unusual punishment bars a city from prosecuting people criminally for sleeping outside on public property when those people have no home or other shelter to go to."  *Id.* at 603.  The holding was narrow and did not "dictate to the City that it must provide sufficient shelter for the homeless, or allow anyone who wishes to sit, lie, or sleep on the streets ... at any time and at any place."  *Id.* at 617 (citation omitted).  The panel also noted that "an ordinance prohibiting sitting, lying, or sleeping outside at particular times or in

particular locations might well be constitutionally permissible," as well as "an ordinance barring the obstruction of public rights of way or the erection of certain structures." *Id.* at 617 n.8. Jackson's filings fail to explain how the City ordinances here run afoul of the narrow prohibition announced in *Martin*.

In sum, the Court cannot grant Jackson's Motion for TRO based on this record. As the discussion above demonstrates, the Court's denial is based primarily on facial deficiencies with the Motion and filings – that is, Jackson's failure to connect the underlying facts and law to the factors that he must establish under *Winters* – and the extraordinary relief offered by a TRO.

Jackson is reminded that this decision is not a ruling on the merits of this case. The complaint has only recently been filed, and service has not been perfected on the named defendants. Magistrate Judge Kasubhai must still screen Jackson's complaint pursuant to 28 U.S.C. § 1915 before IFP status is granted. The Court finds that any determination of whether preliminary relief should issue in this case would benefit from a more fully developed record including responsive briefing from the affected defendants. Thus, plaintiff shall be granted leave to refile this request for relief as a motion for preliminary injunction after the Court has screened the complaint under § 1915.

## CONCLUSION

For the reasons stated above, Jackson's Motion for TRO is DENIED without prejudice. Plaintiff is granted leave to renew the request as a motion for preliminary injunction. If plaintiff moves for a preliminary injunction and his complaint makes

it through the screening process, the Court shall enter a briefing schedule on the motion following service of the complaint on defendants.

IT IS SO ORDERED.

Dated this  10th  day of June 2020.


_____/s/Ann Aiken_____

Ann Aiken
United States District Judge